**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**
**Grand Jury Sworn in on November 3, 2016**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 18-** |
| | : | |
| v. | : | **Grand Jury Original** |
| | : | |
| **KEMAL OKSUZ,** | : | **18 U.S.C. § 1001 (a)(1), (c)(1), (c)(2), 2** |
| | : | **(Concealment of Material Facts)** |
| Also Known as | : | |
| Kevin Oksuz | : | **18 U.S.C. § 1001 (a)(2), (c)(1),(c)(2), 2** |
| | : | **(False Statements)** |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | **UNDER SEAL** |

**I N D I C T M E N T**

The Grand Jury charges that:

Unless otherwise specified, at all times material to this Indictment:

**Introduction**

1. Defendant **KEMAL OKSUZ ("Defendant OKSUZ")** is a citizen of the United States. Between in or about January 2013 and in or about June 2014, Defendant OKSUZ was the president of the non-profit organization Turquoise Council of Americans and Eurasions ("TCAE"). TCAE, which had its principal place of business in Houston, Texas, sought to establish closer relations between the Turkic American Community and the local community at large by coordinating cultural exchanges and organizing trips to Turkey and surrounding countries.

2. The Turkic American Alliance ("TAA") was created as an umbrella organization for six regional federations and over 240 local member organizations across the country, including TCAE. Its mission was to assist Turkic communities in cultural pursuits and connect them to

governments, media outlets, and educational opportunities. TAA was a non-profit organization located in Washington, D.C., with a board consisting of the leaders of the six regional federations.

3. In or about April 2013, TCAE, TAA and some of its regional federations invited several Members of Congress and their staff on a privately-sponsored trip to Turkey and Azerbaijan that was to take place in May 2013 (the "Trip"). During the portion of the Trip in Azerbaijan, Congressional Members and Staffers were to attend a convention in Baku, Azerbaijan entitled "U.S. – Azerbaijan: Vision for the Future" (the "Convention"), which was to focus on energy and trade issues. The Convention was attended by state and local government officials, energy company executives, academics, officials from the federal government, and other interested parties from the United States and other countries.

4. The Assembly of the Friends of Azerbaijan ("AFAZ") was a non-profit organization focused on promoting United States-Azerbaijan relations in business, culture, and education. AFAZ was unaffiliated with TCAE or TAA. Beginning in or about April 2013, OKSUZ was the President of the AFAZ board of directors. During all times relevant to this Indictment, AFAZ had no employees.

5. The State Oil Company of Azerbaijan Republic ("SOCAR") is a wholly state-owned national oil and gas company headquartered in Baku, Azerbaijan. During all times relevant to this Indictment, SOCAR had one office in the United States, SOCAR USA, which acted as its representative for government and business affairs. R.M. was the director of SOCAR USA and reported directly to the CEO of SOCAR in Azerbaijan.

6. Practical Solutions Group ("PSG") was a consulting firm based in Azerbaijan, which incorporated an entity in the United States ("PSG USA") in March 2012. I.A., who also served on AFAZ's board of directors, was PSG USA's president.

7. Travel Agency A is a travel agency based in Brooklyn, New York.

**House Travel Guidelines and Regulations**

8. Privately-sponsored travel by Members of the United States House of Representatives ("Members") and their staff ("Staffers") is regulated by the United States House of Representatives Committee on Ethics ("Ethics Committee") through the United States House Travel Guidelines and Regulations ("House Travel Regulations").

9. House Travel Regulation § 102 (General Rule) states: "No House Member or employee may accept the payment of travel expenses…from a private source to participate in a trip…without prior written authorization from the [Ethics] Committee pursuant to these regulations."

10. House Travel Regulation § 404 (Responsibilities of Traveler) states: "Any traveler seeking [Ethics] Committee approval to accept travel expenses from a trip sponsor must…(a) submit complete and correct Traveler Forms, Trip Sponsor Forms, …and (e) [f]ile the appropriate Post-Travel Disclosure Forms with the Clerk of the House pursuant to part 600 of these regulations."

11. House Travel Regulation §§ 503 and 603.1 require trip sponsors to complete and submit to Members and Staffers: (i) Trip Sponsor Forms ("Trip Sponsor Forms") certifying, among other information, the source(s) of funds used to pay for Congressional trips; and (ii) Sponsor Post-Travel Disclosure Forms ("Post-Travel Forms") certifying, among other information, the source of payments and actual expenses paid on behalf of the sponsored travelers.

12. On the first page of the Trip Sponsor Form, the following bolded warning appears:

> **Willful or knowing misrepresentations on this form may be subject to criminal prosecution pursuant to 18 U.S.C. § 1001.**

13. The same warning also appears a second time on the Trip Sponsor Form immediately preceding the signature line of the Trip Sponsor representative, who, by signing the form, certifies that the "information contained in [the Trip Sponsor Form] is true, complete, and correct to the best of [the representative's] knowledge.

14. The Post-Travel Form contains the same bolded warning and signature certification that appears on the Trip Sponsor Form.

15. House Travel Regulation § 504 (Approval by Ethics Committee) states: "Based on the information provided under these regulations, the [Ethics] Committee will evaluate and approve or deny any request to participate in a trip governed by these regulations."

## COUNT ONE
**(Scheme to Falsify, Conceal and Cover Up Material Facts from the Ethics Committee)**

16. The allegations set forth in paragraphs one through fifteen of this Indictment are incorporated herein by reference as if fully stated herein.

17. From in or about January 2013 to in or about June 2013, in the District of Columbia and elsewhere, in a matter within the jurisdiction of the legislative branch of the Government of the United States, and in connection with an administrative matter and review conducted pursuant to the authority of a committee of the United States Congress, consistent with applicable rules of the House of Representatives, defendant

**KEMAL OKSUZ**

knowingly and willfully falsified, concealed, and covered up by a trick, scheme, and device a material fact, in that, during the House Ethics Committee administrative matter and review of the Trip and Convention, Defendant OKSUZ, intended to and did misrepresent and conceal the true nature and extent of funding provided by SOCAR for the Trip and Convention.

## PURPOSE OF THE SCHEME

18. It was a purpose of the scheme for Defendant OKSUZ to conceal from the Ethics Committee and the public that in violation of House Travel Regulations that OKSUZ used funds from SOCAR, a foreign state-owned oil company, and others known and unknown to the Grand Jury, and funneled such funds through TCAE and AFAZ, to finance aspects of the Trip.

## MANNER AND MEANS

19. The manner and means included the following:

   a. Defendant OKSUZ submitted and caused to be submitted to the Ethics Committee false Trip Sponsor Forms, which falsely stated and certified that TCAE had "not accepted from any other source funds intended directly or indirectly to finance any aspect of the [Trip]," when in truth and in fact, as Defendant OKSUZ well knew, TCAE accepted, both directly and indirectly, funds from other sources, including, but not limited to, from SOCAR, PSG and AFAZ, to finance aspects of the Trip;

   b. Defendant OKSUZ, in communications with staff attorneys for the Ethics Committee, falsely represented, amongst other things, that TCAE was paying for all Trip expenses using its general funds and that TCAE had not received additional outside funding intended to subsidize expenses for the Trip; when in truth and in fact, as Defendant OKSUZ well knew, TCAE was not paying for all the Trip expenses and had accepted funding from outside sources, including, but not limited to, from SOCAR, PSG and AFAZ, to subsidize expenses for the Trip;

   c. Defendant OKSUZ funneled funds obtained from SOCAR intended to fund Members' and Staffers' travel on the Trip through AFAZ and PSG to conceal or hide their true source;

      d.      Defendant OKSUZ established and used AFAZ and TCAE accounts to which he directly and indirectly funneled funds obtained from SOCAR to cover the costs for Members of Congress and their staff to travel on the Trip and attend the Convention; and

      e.      Defendant OKSUZ submitted and caused to be submitted to the Ethics Committee false Post-Travel Forms, which falsely stated and certified that TCAE was the Trip Sponsor "who paid for the trip," including transportation and in-country expenses such as lodging and meals, of Congressional Members and Staffers who attended the Convention and Trip, when in truth and in fact, as Defendant OKSUZ well knew, TCAE did not pay for trip expenses, including transportation, lodging and meal expenses but instead accepted, both directly and indirectly, funds from other sources, including, but not limited to, from SOCAR, PSG and AFAZ to finance aspects of the Trip.

## EXECUTION OF THE SCHEME

20.    In furtherance of the scheme, and to accomplish its purpose, the defendant,

### KEMAL OKSUZ

and others known and unknown to the Grand Jury, committed or caused the following acts, among others, in the District of Columbia and elsewhere.

**Defendant OKSUZ Made False Representations to Obtain Approval for the Trip**

21.    Between in or about January 2013 and in or about June 2013, the Ethics Committee conducted an inquiry and review of the details surrounding the Trip, which was initiated when Defendant OKSUZ and others known and unknown to the Grand Jury, invited several Members of Congress and their staff on the Trip.

22. Several Members and Staffers accepted the invitations and sought approval from the Ethics Committee to go on the Trip and travel to Turkey and Azerbaijan and attend the Convention.

23. As a purported trip sponsor, and as required by the House Travel Regulations, Defendant OKSUZ, on behalf of TCAE, completed the following seven (7) Trip Sponsor Forms to sponsor five (5) Members and two (2) Staffers:

   a. Trip Sponsor Form submitted for House Member R.H.;
   b. Trip Sponsor Form submitted for House Member J.B.;
   c. Trip Sponsor Form submitted for House Member S.J.;
   d. Trip Sponsor Form submitted for House Member T.P.;
   e. Trip Sponsor Form submitted for House Member M.G.;
   f. Trip Sponsor Form submitted for House Staffer D.A.;
   g. Trip Sponsor Form submitted for House Staffer A.T.

24. In each Trip Sponsor Form, Defendant OKSUZ checked a box representing that TCAE had "not accepted from any other source funds intended directly or indirectly to finance any aspect of the trip." Defendant OKSUZ certified, for each form, "the information contained in this [Trip Sponsor Form] is true, complete, and correct to the best of my knowledge."

25. In or about February 2013 through in or about April 2013, Defendant OKSUZ, either in person or by email, submitted the seven Trip Sponsor Forms to the congressional offices of the five Members and two Staffers that TCAE sponsored, who, either directly or indirectly, submitted the forms to the Ethics Committee.

26. In or about January 2013, through in or about April 2013, the Ethics Committee conducted a review of documents submitted by Members and their Staffers, including the Trip

Sponsor Forms, in order to determine whether such travel by the Members and Staffers was in compliance with House Travel Regulations. The Ethics Committee relied on the truthfulness and accuracy of the information provided in the Trip Sponsor Forms when conducting their review of each Members and Staffers' request for approval to travel on the Trip. Based, in part, upon the false representations made by Defendant OKSUZ in the Trip Sponsor Forms that TCAE had not accepted funds from any other source to directly or indirectly finance the trip, the staff attorneys for the Ethics Committee recommended that the Members and Staffers be approved to go on the Trip. The Chairman and Ranking Member of the Ethics Committee accepted this recommendation and issued letters formally approving the Members and Staffers to go on the Trip and travel to Turkey and Azerbaijan and attend the Convention.

27. Between on or about January 2013 and on or about April 2013, and in response to requests for information, Defendant OKSUZ falsely represented to Ethics Committee staff attorneys the source of funding for the Trip and Convention. In one email exchange dated on or about March 17, 2013, an attorney from the Ethics Committee requested Defendant OKSUZ to "Please confirm TCAE will be paying for all trip expenses using its general funds. If TCAE received additional outside funding…intended to subsidize expenses for this trip…we would need to get details on who those funders/donors are…." Defendant OKSUZ falsely responded:

> Yes, TCAE will be paying for all trip expenses using its general funds. TCAE never receives additional outside funding to subsidize expenses for the trips. Our donors are our members: individual and corporate members.

**Defendant OKSUZ Obtained Funds from SOCAR and Other Sources to Finance the Trip**

28.     In April 2013, Defendant OKSUZ hired Travel Agency A to help coordinate and purchase all travel reservations associated with the Trip, including the airfare that was to be paid for transporting the Members and their Staffers to and from Turkey and Azerbaijan.

29.     To pay for the travel reservations made by Travel Agency A, Defendant OKSUZ wired funds from bank accounts owned by TCAE and AFAZ to a bank account owned by Travel Agency A.

*Funding Funneled from SOCAR and AFAZ*

30.     In or about April 2013, Defendant OKSUZ, and others known and unknown to the Grand Jury, adopted the AFAZ bylaws and appointed Defendant OKSUZ President of AFAZ.

31.     In or about May 2013, Defendant OKSUZ executed an agreement on behalf of AFAZ securing a $750,000 payment from SOCAR "to organize the Convention taking place in Baku, Azerbaijan on May 28-29, 2013."  Notwithstanding OKSUZ's representation to the Ethics Committee that TCAE did not accept funding for the Trip from any other source, the agreement stated that SOCAR's $750,000 payment, which was half the projected budget for the Convention, would cover "accommodation, travelling expenses, venue rental and all other related expenses and fees." An attachment to the agreement sets out the "Proposed Budget for the Convention":

Proposed Budget for the Convention

| Estimate Proposed Budget for the Convention | |
|---|---|
| SERVICE ITEMS | AMOUNT |
| Convention Organization | $ 50,000.00 |
| Hotel and Accommodations | $ 100,000.00 |
| Marketing and Advertising | $ 25,000.00 |
| Food &Entertainment | $ 75,000.00 |
| International Preparation Fee (structure, employees, transportation) | $1,250,000.00 |
| Miscellaneous | N/A |
| TOTAL | $1,500,000.00 |

32. Defendant OKSUZ opened a Wells Fargo business checking account in the name of AFAZ ending in 9537 ("AFAZ Checking Account") on or about February 8, 2013. In May 2013, Defendant OKSUZ was the only authorized signatory on the account. Records show that on or about May 2013 through July 2013, large wire transfers were made from SOCAR and other companies later identified as corporate sponsors for the Convention, to the AFAZ Checking Account, as follows:

| Date of Deposit | Sponsor | Amount Deposited into AFAZ |
|---|---|---|
| 5/14/13 | SOCAR | $750,000 |
| 5/16/13 | Company A | $50,000 |
| 5/31/13 | Company B | $10,000 |
| 6/13/13 | Company C | $10,000 |
| 6/21/13 | Company D | $10,000 |
| 7/12/13 | Company E | $10,000 |

33. Prior to the May 14, 2013, deposit from SOCAR, AFAZ had only $283.15 in its checking account. Records also show that from the date AFAZ's Checking Account was opened until the May 14, 2013, SOCAR deposit, the account had not carried a balance greater than $283.15.

34. On or about May 16, 2013, AFAZ wired $378,452 from the AFAZ Checking Account to Travel Agency A. Five days later on May 21, 2013, AFAZ wired another $85,948 from the AFAZ Checking Account to Travel Agency A. In bank documents, Defendant OKSUZ

described that the May 2013 transfers to Travel Agency A were for "transportation for US-Azerbaijan conference" or for "US-AZ convention transportation."

### *Funding Funneled from SOCAR and PSG*

35. On or about February 8, 2013, PSG and SOCAR entered into an agreement for PSG to provide aid in planning events to promote Azerbaijan and SOCAR. On or about April 23, 2013, PSG and SOCAR executed a work order for PSG to provide aid in planning the Convention.

36. Notwithstanding Defendant OKSUZ's representation to the Ethics Committee that TCAE did not accept funding for the Trip from any other source, in or about April 2013, Defendant OKSUZ executed an agreement on behalf of TCAE securing a $750,000 payment from PSG for the "US-Azerbaijan Convention Baku 2013" ("TCAE-PSG Agreement"). The agreement sets out the below estimated budget for the Convention, which is identical to the proposed budget attached to the agreement Defendant OKSUZ executed between AFAZ and SOCAR:

Convention's Estimated Total Budget: $1,500,000

1. Convention Organization: $50,000
2. Hotel and Accommodations: $100,000
3. Marketing and Advertising: $25,000
4. Food & Entertainment: $75,000
5. International Preparation Fee (structure, employees, transportation, etc.): $1,250,000
6. Miscellaneous: N/A

37. The TCAE-PSG Agreement further states that PSG's "contribution of 50 percent of total expenses will be used toward any of the above mentioned expenditures" and that "[PSG] and [SOCAR] will be identified as the sponsors of the event and the company name and/or logo will appear on all advertising and event materials."

38. On or about May 7, 2013, TCAE owned a Wells Fargo business checking account ending in 5513 ("TCAE Checking Account") and carried a balance of approximately $40,509.22. Notwithstanding OKSUZ's representation to the Ethics Committee that TCAE did not accept funding for the trip from any other source, on or about May 7, 2013, PSG wired $750,000, or half the projected budget for the Convention, from a bank located in Azerbaijan into TCAE's Checking Account. Three days later on May 10, 2013, TCAE wire transferred $515,235 to Travel Agency A to pay for Trip-related travel bookings. Without the funds transferred from PSG, TCAE would have had insufficient funds to wire transfer $515,235 to Travel Agency A.

39. On or about May 21, 2013, TCAE wire transferred from its checking account approximately $153,693 to Travel Agency A to pay for Trip-related travel.

40. On or about May 21, 2013 through in or about June 2013, TCAE and PSG amended the TCAE-PSG Agreement, increasing the proposed budget for the Convention to $2,275,000 and PSG sent an additional $774,642.14 in wire transfer payments to TCAE.

**Post-Travel Forms**

41. Following their return from Turkey and Azerbaijan in May or June of 2013, Members and Staffers compiled and filed with the Clerk of the House disclosure forms required by the House Travel Regulations, which included a completed Post-Travel Form for each traveler.

42. In or about June 2013, as required by the House Travel Regulations, Defendant OKSUZ completed the following seven (7) Post-Travel Forms on behalf of the same five (5) congressional Members and two (2) Staffers for which he had previously submitted Trip Sponsor Forms:

   a. Post-Travel Form submitted for House Member R.H.;
   b. Post-Travel Form submitted for House Member J.B.;
   c. Post-Travel Form submitted for House Member S.J.;

    d. Post-Travel Form submitted for House Member T.P.;

    e. Post-Travel Form submitted for House Member M.G.;

    f. Post-Travel Form submitted for House Staffer D.A.;

    g. Post-Travel Form submitted for House Staffer A.T.

43. Notwithstanding the fact that, as discussed above, TCAE had received funds from SOCAR, PSG, and AFAZ to fund the Trip and Convention, in each Post-Travel Form, Defendant OKSUZ represented (a) that TCAE was the respective Trip Sponsor "who paid for the trip" and (b) the specific amounts TCAE allegedly paid for in transportation, lodging and meal expenses, amongst others, on behalf of the above-referenced seven Members and Staffers. Defendant OKSUZ certified, for each form, "the information contained in this [Post-Travel Form] is true, complete, and correct to the best of my knowledge."

44. In the Post-Travel Forms, Defendant Oksuz falsely represented that TCAE paid for in-country expenses such as lodging and meal expenses in Turkey, which were paid for by the Bosphorus Atlantic Cultural Association of Friendship and Cooperation (BAKIAD).

45. In or about June 2013, Defendant OKSUZ, either in person or by email, submitted the seven Post-Travel Forms to the congressional offices of the five Members and two Staffers that TCAE sponsored, who, either directly or indirectly, filed the Post-Travel Forms with the Clerk of the House.

46. In or about June 2013, the Ethics Committee conducted a review of Post-travel disclosures submitted to the Clerk of the House by the Members and Staffers, including the Post-Travel Forms, in order to determine whether the Trip to Turkey and Azerbaijan by the Members and Staffers complied with House Travel Regulations. The Ethics Committee relied on the truthfulness and accuracy of the information provided in the Post-Travel Forms when conducting

their review of each Members and Staffers' Post-travel disclosures. Based, in part, upon the false representations made by Defendant OKSUZ in the Post-Travel Forms, the Ethics Committee concluded the Members and Staffers travel to Turkey and Azerbaijan was in compliance with House Travel Regulations.

All in violation of Title 18, United States Code, Sections 1001(a)(1), (c)(1), (c)(2) and 2.

## COUNT TWO
**(Making a False Statement to the Ethics Committee on a Trip Sponsor Form)**

47. The allegations set forth in paragraphs one through forty-six of this Indictment are incorporated herein by reference as if fully stated herein.

48. In or about April 2013, in the District of Columbia and elsewhere, in a matter within the jurisdiction of the legislative branch of the Government of the United States, and in connection with an administrative matter and review conducted pursuant to the authority of a committee of the United States Congress, consistent with applicable rules of the House of Representatives, defendant

**KEMAL OKSUZ**

knowingly and willfully made and caused to be made materially false, fictitious, and fraudulent statements and representations, in that, Defendant OKSUZ falsely represented and caused to be represented, on the Trip Sponsor Form submitted for House Member T.P., that TCAE had "not accepted from any other source funds intended directly or indirectly to finance any aspect of the [Trip]," which Defendant OKSUZ then certified, submitted and caused to be submitted to the Ethics Committee as true, complete and correct to the best of Defendant OKSUZ's knowledge, when in truth and in fact, as Defendant OKSUZ well knew, TCAE accepted, both directly and

indirectly, funds from other sources, including, but not limited to, from SOCAR, PSG and AFAZ, to finance aspects of the Trip.

In violation of Title 18, United States Code, Sections 1001(a)(2), (c)(1), (c)(2) and 2.

## COUNT THREE
### (Making a False Statement to the Ethics Committee on a Post-Travel Form)

49. The allegations set forth in paragraphs one through forty-eight of this Indictment are incorporated herein by reference as if fully stated herein.

50. In or about May 2013, through in or about June 2013, in the District of Columbia and elsewhere, in a matter within the jurisdiction of the legislative branch of the Government of the United States, and in connection with an administrative matter and review conducted pursuant to the authority of a committee of the United States Congress, consistent with applicable rules of the House of Representatives, defendant

### KEMAL OKSUZ

knowingly and willfully made and caused to be made materially false, fictitious, and fraudulent statements, in that, Defendant OKSUZ falsely represented and caused to be represented on the Post-Travel Form, submitted for House Member T.P., that TCAE was the Trip Sponsor "who paid for the trip," including transportation and in-country expenses such as lodging and meals, which Defendant OKSUZ then certified, submitted and caused to be submitted to the Ethics Committee as true, complete, and correct to the best of Defendant OKSUZ's knowledge, when in truth and in fact, as Defendant OKSUZ well knew, TCAE did not pay for trip expenses, including transportation, lodging and meal expenses, amongst others, on behalf of House Member T.P.

In violation of Title 18, United States Code, Section 1001(a)(2), (c)(1), (c)(2) and 2.

## COUNT FOUR
**(Making a False Statement to the Ethics Committee on a Trip Sponsor Form)**

51. The allegations set forth in paragraphs one through fifty of this Indictment are incorporated herein by reference as if fully stated herein.

52. In or about April 2013, in the District of Columbia and elsewhere, in a matter within the jurisdiction of the legislative branch of the Government of the United States, and in connection with an administrative matter and review conducted pursuant to the authority of a committee of the United States Congress, consistent with applicable rules of the House of Representatives, defendant

### KEMAL OKSUZ

knowingly and willfully made and caused to be made materially false, fictitious, and fraudulent statements and representations, in that, Defendant OKSUZ falsely represented and caused to be represented, on the Trip Sponsor Form submitted for House Staffer A.T., that TCAE had "not accepted from any other source funds intended directly or indirectly to finance any aspect of the [Trip]," which Defendant OKSUZ then certified, submitted and caused to be submitted to the Ethics Committee as true, complete, and correct to the best of Defendant OKSUZ's knowledge, when in truth and in fact, as Defendant OKSUZ well knew, TCAE accepted, both directly and indirectly, funds from other sources, including, but not limited to, from SOCAR to finance aspects of the Trip.

In violation of Title 18, United States Code, Sections 1001(a)(2), (c)(1), (c)(2) and 2.

## COUNT FIVE
**(Making a False Statement to the Ethics Committee on a Post-Travel Form)**

53. The allegations set forth in paragraphs one through fifty-two of this Indictment are incorporated herein by reference as if fully stated herein.

54. In or about May 2013, through in or about June 2013, in the District of Columbia and elsewhere, in a matter within the jurisdiction of the legislative branch of the Government of the United States, and in connection with an administrative matter and review conducted pursuant to the authority of a committee of the United States Congress, consistent with applicable rules of the House of Representatives, defendant

**KEMAL OKSUZ**

knowingly and willfully made and caused to be made materially false, fictitious, and fraudulent statements, in that, Defendant OKSUZ falsely represented and caused to be represented on the Post-Travel Form, submitted to and for House Staffer A.T., that TCAE was the Trip Sponsor "who paid for the trip," including transportation and in-country expenses such as lodging and meals, which Defendant OKSUZ then certified, submitted and caused to be submitted to the Ethics Committee as true, complete, and correct to the best of Defendant OKSUZ's knowledge, when in truth and in fact, as Defendant OKSUZ well knew, TCAE did not pay for trip expenses, including transportation, lodging and meal expenses, amongst others, on behalf of House Staffer A.T.

In violation of Title 18, United States Code, Section 1001(a)(2), (c)(1), (c)(2) and 2.

A TRUE BILL

_____
FOREPERSON

_____
ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

JESSIE K. LIU
United States Attorney
For the District of Columbia

By: /s/ Jessie K. Liu
Michelle Bradford
Assistant United States Attorney

ANNALOU TIROL
Acting Chief, Public Integrity

By: /s/ Annalou Tirol
Marco A. Palmieri
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice